IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LINDA M. McGARRAH                                                    PLAINTIFF

V.                                    NO. 13-5239

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Linda M. McGarrah, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current application for DIB on November 10, 2010, alleging an inability to work since July 31, 1998, due to degenerative disc disease (DDD), fibromyalgia, and osteoporosis. (Tr. 113-114, 127, 131). Plaintiff was insured through December 31, 2003. (Tr. 12). Therefore, the relevant time period in this case is July 31, 1998 to December 31, 2003.   An administrative hearing was held on May 11, 2012, at which Plaintiff appeared with counsel, and she and her husband testified. (Tr. 25-52).

By written decision dated June 11, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe -

-1-

degenerative disc disease, fibromyalgia, and depression. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found that during the relevant time period, Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) with restrictions. The claimant is capable of occasionally lifting and/or carrying 10 pounds, but less than 10 pounds frequently. She is able to sit for 6 hours of an 8-hour workday, and stand and/or walk for 2 hours of an 8-hour day. She is able to occasionally climb, balance, crawl, kneel, stoop and crouch. She is able to perform occasional overhead work. She is capable of understanding simple, repetitive tasks, and responding to supervision that is simple, direct and concrete in nature.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would have been unable to perform any past relevant work, but there were other jobs Plaintiff would have been able to perform, such as bench final assembler, zipper machine tender, and hand packager. (Tr. 19-20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 22, 2013. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 14, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnard, 314 F.

3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports

the Commissioner's decision, the Court may not reverse it simply because substantial evidence

exists in the record that would have supported a contrary outcome, or because the Court would

have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In

other words, if after reviewing the record, it is possible to draw two inconsistent positions from

the evidence and one of those positions represents the findings of the ALJ, the decision of the

ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden

of proving her disability by establishing a physical or mental disability that has lasted at least

one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v.

Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A),

1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3),

1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for

at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation

process to each claim for disability benefits: (1) whether the claimant had engaged in substantial

gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

AO72A
(Rev. 8/82)

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.    Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ erred by failing to properly consider all of Plaintiff's impairments in combination; 2) The ALJ erred in his credibility determination; 3) The ALJ erred in his RFC determination; and 4) The ALJ erred in relying on testimony from the VE. (Doc. 14).

**A.    Impairments in Combination:**

Plaintiff argues that the ALJ failed to find several other impairments from which Plaintiff suffered as severe, such as osteoarthritis in the bilateral knees, large medial meniscus tear in the right knee, insomnia and chronic fatigue, facet joint disease, shoulder pain related to a torn rotator cuff, degenerative joint disease of the back and knees, obesity, uncontrolled hypertension, anxiety, gastrointestinal reflux disease, frequent urinary tract infections, panic attacks, kidney problems, chest pain and hip pain.

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 13).  He also stated that an impairment or combination of

-4-

impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 13). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr. 13). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 14). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

Furthermore, in her Disability Report - Adult - dated January 21, 2011, Plaintiff did not list any impairment other than degenerative disc disease, fibromyalgia, and osteoporosis as conditions that limited her ability to work (Tr. 131), which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).

Based upon the foregoing, the Court finds there is substantial evidence that the ALJ considered all of Plaintiff's impairments in combination.

### B.   Credibility Analysis:

Plaintiff argues that the ALJ improperly rejected Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms and also neglected to note the requirements of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily

-5-

activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 18).  He concluded that although the medical evidence from the period at issue demonstrated the existence of severe physical and mental impairments, nothing in the record suggested that Plaintiff was completely disabled during that time. (Tr. 18). Accordingly, the ALJ gave little weight to the hearing testimony. (Tr. 18). The ALJ noted in his decision that with respect to Plaintiff's daily activities during the relevant time period, Plaintiff was able to care for farm animals as well as her own family, and was able to perform personal hygiene, albeit with some restriction. (Tr. 15). At the hearing held before the ALJ on May 11, 2012, Plaintiff testified that in 1997 and 1998 she was working at a restaurant, doing about five different jobs, including cleaning the restaurant every day. (Tr. 31). She also cleaned the restaurant owner's house for him. (Tr. 31). Plaintiff testified that Flexeril or muscle relaxers could not be taken while she was working, because they made her

-6-

drowsy. (Tr. 33). Accordingly, she just took Tylenol during the day to try to "endure it and get through the day." (Tr. 34). She also testified that she was taking Effexor at that time, and stopped taking it because it was not doing any good. (Tr. 34). She stated that at the time of the hearing, she was taking Pristiq, and that it had helped more with depression than what the others had in the past. (Tr. 34). Plaintiff further testified that in 1997 and 1998, even though she hurt, she had her children to take care of, had to do the laundry when she got home from work, fix meals, and had cattle that she had to take care of and lift heavy bags of hay and feed. (Tr. 35). She would carry 60 pound bales of hay every day during the winter. (Tr. 35). She said that she did not really notice she had anxiety at that time until she was diagnosed. (Tr. 35). Her anxiety "got bad" in 2007, well beyond the relevant time period, when she went on the anxiety medicine. (Tr. 36). Plaintiff testified that after she stopped working, between 1998 and 2004, she began having problems with her focus and concentration, and that between 1998 and 2003, she had surgery on her right knee as an outpatient. (Tr. 38). She testified that between 2000 and 2003, her back pain was getting worse but she would "still go ahead and try to do my things at home."(Tr. 39). She stated she was not the type that could stand to see anything that needed to be done and not be able to do it. (Tr. 39). It is therefore clear that the ALJ considered Plaintiff's daily activities and found them to be inconsistent with disabling pain.

Also during the relevant time period, on October 12, 1998, X-rays of Plaintiff's lumbosacral spine revealed a possible unilateral spondylolysis at L-5 on the left; with no evidence of spondylolisthesis; and a slight narrowing of the L-5/S-1 disc space. (Tr. 205). Upon examination by Dr. Burton Bledsoe and Diane Serenson-Ungar, APN, on January 1, 1999, Plaintiff's gait was reported as coordinated and smooth, her station was erect, and her range of

-7-

motion in all joints were without crepitus, pain or limitation. (Tr. 260). On June 2, 1999, Plaintiff reported to Rouse Family Medical Clinic that she was getting mild help with Celebrex for her low back. (Tr. 199).  A CT of Plaintiff's Lumbar spine on June 8, 2000, revealed mild disc bulge at L4/L5 and L5/S1 without a focal disc herniation, facet arthropathy at L4/L5, and the radiologist did not see any significant spinal stenosis or neural foraminal narrowing in the study. (Tr. 203).

Plaintiff saw Dr. Curtis Hedberg in 2000 and 2001. By August 28, 2000, Dr. Hedberg reported that Plaintiff was doing much better with her GERD, fibromyalgia, and depression. (Tr. 253). The Ultram seemed to be helping the pain and she was tolerating the Neurontin. (Tr. 253). Dr. Hedberg assessed Plaintiff with GERD, stable, Fibromyalgia syndrome, improving, and asked Plaintiff to continue her medications. (Tr. 253). By October 5, 2000, Plaintiff was complaining of continued back pain. (Tr. 249).  Most of her pain was in her low thoracic and upper lumbar region and hips, and it was reported that she was very uncomfortable and could barely remain seated in the chair because her back hurt so much. (Tr. 249).  Plaintiff continued to have pain on November 30, 2000, but had told Dr. Hedberg that she had been doing fairly well except for having quite a bit of pain. (Tr. 247). The antidepressants had helped her greatly. (Tr. 247). She was assessed with fibromyalgia and back pain. (Tr. 247).

On February 23, 2001, Plaintiff complained to Dr. Hedberg that she had continued depression, and that her back continued to hurt, but she felt that the Celebrex had really helped with the pain. (Tr. 243). By May 7, 2001, Dr. Hedberg reported that her CT scan showed evidence of mild lumbar disc bulging and severe facet joint disease at L4,L5, and he suspected this was the cause of her pain. (Tr. 240). Dr. Hedberg reported that he would have her make an

-8-

appointment to see Dr. Vincent Runnels, and that very likely he would tell her that she needed to lose weight and begin some type of exercise program. (Tr. 240). There is no indication in the records that Plaintiff ever called Dr. Runnels for an evaluation.  "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted).

Plaintiff began seeing Dr. William C. Kendrick on March 21, 2003, when she complained of right shoulder and arm pain. (Tr. 329). At that time, Plaintiff was reported as having full range of motion of her right shoulder. (Tr. 329). By July 1, 2003, Dr. Kendrick reported that her medications seemed to be helping her, and her obesity was noted. (Tr. 330). On September 29, 2003, Plaintiff was complaining of pain behind her right knee. (Tr. 333), and a right leg Doppler study revealed a Baker's cyst. (Tr. 327). On October 7, 2003, Dr. Kendrick referred Plaintiff to an orthopedist. (Tr. 335).  On November 7, 2003, orthopedist Dr. B. Raye Mitchell, Jr. performed a right knee arthroscopy, partial medial and lateral meniscectomy, and chondroplasty of medial femoral cyndyle and posterior patella. (Tr. 367). In a follow-up report dated November 13, 2003, Dr. Mitchell noted that her range of motion was "actually quite good today." (Tr. 308). There are no further complaints of knee issues until September 22, 2011, several years after the relevant time period. (Tr. 457).

The Court finds that a review of the record as a whole indicates there is substantial evidence to support the ALJ's credibility findings for the relevant time period.

**C.      RFC Determination:**

Plaintiff argues that the ALJ's RFC finding that Plaintiff had the ability to perform less than a full range of sedentary work during the relevant time period is not supported by

substantial evidence.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of  her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

The ALJ gave no weight to the medical records that documented treatment after the date last insured. (Tr. 18). One of these records is that of Dr. Kendrick dated May 2, 2012, who reported that "[d]ue to the summation of this patient's many medical problems as listed below, it is my opinion that she is unable to be gainfully employed." (Tr. 432). Clearly, this is dated nine years after the end of the relevant time period. Further, the ultimate question of disability is reserved for the ALJ.  House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007).  The Court also notes that the records reflect a five year gap in treatment between 2004 and 2009. (Tr. 343, 404).

The ALJ gave some weight to the state agency physicians. (Tr. 18). He gave significant weight to Dr. Robert Wilson's opinion of August 11, 1998, restricting Plaintiff to sedentary work and further limiting Plaintiff with appropriate postural and overhead lifting restrictions. (Tr. 18).

-10-

The ALJ also recognized Plaintiff's mental impairments by limiting her to simple, repetitive tasks with supervision that is simple, direct, and concrete in nature. (Tr. 18).

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's RFC determination.

### D.    Hypothetical Question to VE:

Plaintiff argues that the ALJ erred in not including additional exertional and non-exertional impairments during the period in question in his hypothetical question to the VE. At the hearing, the ALJ posed the following hypothetical to the VE:

> Q: I would like you to assume a hypothetical person at the date last insured was a younger individual, high school education or GED education rather. This person cannot return to any of the past work you just told me about and there are no transferable skills. The person can occasionally lift and carry 10 pounds, frequently less; sit for six hours in a day; stand/walk for two; occasionally climb, balance, crawl, kneel, stoop, crouch; occasionally work overhead. That's the first hypothetical. Would there be work in the economy that person could do?

(Tr. 49). In response, the ALJ testified that the jobs of bench final assembler in optical goods, zipper machine operator, and hand packagers, would be available. (Tr. 49-50).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's response to the hypothetical question posed by the ALJ constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the jobs of bench final assembler, zipper machine operator, and hand packager. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

AO72A
(Rev. 8/82)

**IV.      Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 8th day of October, 2014.

/s/ Erin L. Setser

HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)